WM. J. WHITE, TRUSTEE, *vs.* ANDREW J. KIBLER, ADM'R.

The Commissioner, in stating the account of the defendant, having departed from the established rule as to the mode of stating such accounts, and it appearing that the defendant was possibly prejudiced by the mode adopted by the Commissioner, the decree below was set aside, and the case remanded to the Circuit Court, with instructions to have the account taken in the established mode.

BEFORE JOHNSON, CH., AT LANCASTER, JUNE, 1867.

In October, 1866, the plaintiff, White, was appointed trustee of Anna Mittag, in the place of Joseph A. Cunningham, deceased, the former trustee, and this was a bill by White against Kibler, administrator of Cunningham, for an account. The case was referred to the Commissioner to state the accounts of the intestate, and he submitted a report, which it seems necessary to give in full in order that the decision of the Court may be understood. It is as follows:

The Commissioner reports that the *corpus* of Mrs. Mittag's estate consisted of the bonds, notes and money turned over to the late Joseph A. Cunningham, by George W. Williams, Esq., in 1861.

On the ——— day of February, 1867, the defendant, as administrator, turned over to complainant notes originally received from Mr. Williams, amounting, at that day, with interest, to $22,302.53, and notes which he had reinvested amounting to $2,738.76, with the interest included; the whole making the sum of $25,041.27, as stated in the receipt filed with the answer.

It only remains for the defendant to account for his receipts and disbursements of money during the administration of the deceased trustee, and the transactions of the defendant as administrator since his decease.

In the year 1861, deceased received, as trustee, in good money, which he did not invest for the estate, less commissions on the whole amount of cash receipts, the sum of $1,696.52, for which defendant is chargeable with interest from January 1, 1862.

Up to May 5, 1862, the trustee had received, in State money, then good, $1,631.09, and paid out in that year, probably in the same money, $651.70, and commissions, $57.06, leaving a balance against him, in State money, of $922.33. In the same year trustee received, in Confederate bills, $2,980.18, and paid, in the same funds, $972.06, and was entitled to commissions, $98.80, leaving a balance against him, in Confederate money, of $1,909.32.

In order to state the account most favorably, it may be proper to reduce the State money received in this year to the standard of Confederate money, and blend them together:

| | | |
|---|---:|---:|
| Balance of State money | $922 | 33 |
| Premium 10 per cent | 92 | 23 |
| Balance Confederate money | 1,909 | 32 |
| | $2,923 | 88 |
| Add receipt, in 1863 | 546 | 22 |
| | $3,470 | 10 |

| | | | | |
|---|---:|---:|---:|---:|
| Dedu't am't paid in 1863, and invested | $3,159 | 84 | | |
| Commissions on $1,505.26, paid | 37 | 88 | | |
| Commissions on $546.22, rec'd | 13 | 65 | 3,211 | 37 |
| | | | $258 | 73 |

| | | |
|---|---:|---:|
| Balance due, with interest from January 1st, 1863 | $258 | 73 |
| This was, at that day, worth one-third in gold according to the testimony of Mr. Hasseltine, say | 86 | 24 |
| In 1864, trustee received | $1,107 | 61 |
| And paid out $2,142.03, and commissions, $81.24 | 2,223 | 27 |
| Balance due him January 1st, 1865 | $1,115 | 66 |
| Worth in gold, 1-60, (see Hasseltine's evidence) | 18 | 59 |
| In 1865, was paid | $ 4 | 87 |
| In 1866 | 55 | 37 |

Bringing forward this balance to January 1st, 1867, we find trustee chargeable, as follows:

| | | | | |
|---|---:|---:|---:|---:|
| To balance due January 1st, 1862 | | | $1,696 | 52 |
| Interest to 1st January, 1867 | | | 593 | 78 |
| Balance January 1st, 1863, in gold | $86 | 24 | | |
| Interest four years | 24 | 13 | 110 | 37 |
| Premium on $110.37, in gold, at 35 per cent | | | 38 | 61 |
| | | | $2,439 | 28 |

The credits brought forward, as stated, are as follows:

| | | |
|---|---:|---:|
| By balance due trustee, January 1st, 1865...$ | 18 59 | |
| .Interest to January 1st, 1867, 2 years........ | 2 60 | 21 19 |
| Add gold premium on do., 35 per cent... | | 7 41 |
| Am't paid in 1865.................................. | 4 87 | |
| Commissions on do................................ | 12 | 4 99 |
| Interest on this, 1 year............................ | | 35 |
| Am't paid year 1866........................ ..... | 55 37 | |
| Commissions on do................................ | 1 46 | 56 83 |

| | | |
|---|---:|---:|
| Commissions on interest, as follows: | | |
| ·By com's on int. on balance due Jan'ry, 1862... | 593 78 | 14 82 |

| | | | |
|---|---:|---:|---:|
| ·By com's on int. on balance due Jan'y, 1863.........ₚ.............................. | 24 13 | | |
| And on premium on do., 55 per cent... | 8 43 | 32 56 | 80 |
| And on interest on bal. due trustee January, 1865................................. | 4 35 | | |
| And on premium on do......... .......... | 1 52 | 5 87 | 14 |
| By com's on $22,302.53, original notes turned over............................. | | | 557 56 |

| | | |
|---|---:|---:|
| Total credits.............................................$ | 664 09 | |
| Total debits............................................... | 2,439 38 | |

Balance·due trustee January 1st, 1867............ $ 1,775 19

Which the Commissioner finds to be the balance due the trust estate, by the estate of Joseph A. Cunningham, deceased. But it is submitted, on the part of the defendant, that he should be allowed his commissions on the bonds and notes received by him from G. W. Williams, Esq., in 1861. The amount so received by him was $21,177.12, but he collected of that amount, in 1861, notes of S. J. Dunlap, $753.21, upon which he is allowed commissions in that year. His commissions on the balance of said notes would have been as follows: On $21,177.12, $753.21; $20,423.91, at 2½ per cent, $510.57. The interest on that sum, to January 1st, 1867, 5 years, would be $178.65; which he would be entitled to a credit for, on the above balance, if the commissions should have been taken out on the bonds and notes received in 1861, rather than at the date of the settlement. If the Court should decide that the defendant is so

entitled, the balance will be in favor of complainant, January 1st, 1867, $1,595.54, instead of the balance as stated above.

The defendant excepted to the report; and the decree of His Honor upon the report and exceptions is as follows:

JOHNSON, Ch.   On the 29th of January, 1861, George W. Williams executed to Joseph A. Cunningham a trust deed by which a considerable estate was secured to Mrs. Anna Mittag, wife of John F. G. Mittag; the trust estate, consisting principally of personal securities for the payment of money and cash, was turned over to J. A. Cunningham, as trustee, in accordance with the terms of the deed. In 1861 and 1862, there were considerable balances left in the hands of the trustee, in money, after the payments to the *cestui que trust*, and new investments were deducted.  In 1863 and 1864, the payments made and the reinvestments by the trustee amounted to more than his receipts in money to an amount slightly larger than the balances against the trustee in the two former years.   On the 11th day of November, 1865, Joseph A. Cunningham died intestate, and the defendant Andrew J. Kibler took out letters of administration upon his estate, and in October, 1866, the complainant W. J. White was appointed by this Court trustee in place of J. A. Cunningham, deceased.

On the        of February, 1867, the defendant turned over to the complainant notes originally received from G. W. Williams, amounting on that day, with the interest, to $22,302.53, and notes which Cunningham had taken amounting, on that day, to $2,738.76, making, in the whole, $25,041.27 ; $478.01 more than the amount due, making up the statements in the ordinary way.

The bill is filed for an account of the moneys received and paid out by J. A. Cunningham after his appointment on account of the trust estate.

And if the Commissioner had made his report regarding all the receipts and payments made by Cunningham as having been in good money, I do not know that I would have ordered him to remodel the account, for it required great firmness on the part of the trustee to refuse payment of old notes in the latter part of the war by over anxious debtors, and the trustee in this case is entitled to credit for having received so little of it.

The Commissioner, however, regarded the money received in 1861 as good, and scaled the balances in the following years, and drew distinctions between State money and Confederate money.   To this

report of the Commissioner at least twenty-one exceptions have been filed by the defendant, but I have neither time nor the inclination to take them up one by one and dispose of them.

The proof was that Cunningham was not engaged in any speculations, and there was no proof that he used the State bills to any better advantage than he did the Confederate money received by him about the same time. The opinion of the Court is that this distinction should not have been made by the Commissioner.

The amount of the balance of receipts over expenditures, on the first day of January, 1862, is not scaled, but inasmuch as the balances for other years are scaled I think it is but just that that should be also, on the same principles on which the others are.

If the receipts of any portion of the trust property in Confederate money can be sustained, and they are not questioned, my opinion is that the trustee was entitled to commissions for the full amount to be credited on the first of January next after they were received.

It is ordered and decreed that the above opinion be taken as the judgment of the Court, and that such portions of the Commissioner's report as conflicts with this opinion be overruled, and that all other portions of the same be confirmed, and made the judgment of this Court. It is also ordered and decreed that the report of the Commissioner be referred back to him, that he may make it conform to the above opinion, and that the costs of each party be paid by the estates which they respectively represent.

The defendant appealed, and now moved this Court to reverse or modify the decree, on the grounds:

1. Because, it is respectfully submitted, the Chancellor, in his said decree, erred in sustaining the Commissioner's report on the accounts of the trustee in his departure, in said report, from the established mode of stating such accounts.

2. Because he therein sustained the Commissioner in considering and stating certain cash receipts of the trustee, and making up and charging balances thereof against said trustee, independent of, and apart from, his general account of the funds which went into his hands as such trustee.

3. Because he has therein sustained the Commissioner in a mode of stating the accounts whereby, in breaking up said cash account into several and distinct fragments, and fixing upon him charges for balances of currency against him at certain periods and credits

for balances in his favor at later periods during the war, and scaling said balances down to the gold standard, the said Commissioner has caused the losses occasioned by the depreciation of said currency to fall upon the trustee; whereas it is submitted that, inasmuch as the trustee acted in good faith, and with even more than ordinary prudence and caution in the management of said trust estate, and in receiving and paying out said currency, such losses should fall upon said trust estate.

4. Because the Chancellor has therein sustained the Commissioner in postponing the allowance of credit for commissions on the trust funds turned over to him to the 1st January, 1867, instead of allowing the same as a credit on the 1st day of January (1862), next succeeding the year in which the same was so turned over.

5. Because the decree of the Chancellor is, in many other respects, erroneous.

*Moore*, for appellant.
*Kershaw*, contra.

Sept. 30, 1870. The opinion of the Court was delivered by

MOSES, C. J. It may be that the departure in the statement of the accounts from the mode heretofore established by the Courts has resulted in prejudice to the deceased trustee.

Assuming even that justice may be reached by separating from the general account certain receipts and expenditures, and making them the basis of the calculation, by which a balance, the one way or the other, may be ascertained, still the trustee called to answer for the funds which were in his hands, may, of right, demand an examination of his whole account, that the annual balance may be struck in conformity with the prescribed rule.

This right should the more readily be conceded in this case, for the Chancellor states in his decree that the amount turned over by the administrator of the original trustee on the — day of February, 1867, exceeded "by $478.01, the amount due, making up the statements in the ordinary way," while the report of the Commissioner, by disjointing the account and taking up only such items of it as were outside "of the payments to the *cestui que trust* and new investments," makes a balance due by the trustee of $1,775.19. This discrepancy is in itself sufficient to shew that the objection of the administrator may be well founded.

The principles which regulate and govern the adjustment of the

accounts of those who stand in a fiduciary relation, have been laid down with precision in the reported decisions. If there are particular circumstances which may justify a departure from them, they must be applied in strict analogy to the reasons on which the general rule is founded.

We are the more disposed to remit this case for a full report on the receipts and disbursements of the trustee, as the Chancellor has ordered it back, to be reformed, in some respects, according to the intimations of his decree; and an examination of the whole account, to be followed by a report exhibiting the result of it in the usual way, will not add to the delay.

Without, therefore, expressing an opinion on any other ground submitted in the notice of appeal, it is ordered and adjudged that the decree of the Chancellor be set aside, and the case remanded to the Circuit Court with instructions that the accounts of the trustee be submitted to a Referee to be appointed by the said Court, to be taken according to the mode established by the rule of practice of the Court.

*Willard*, A. J., and *Wright*, A. J., concurred.